# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| HENRY J. ALLEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 03-0490-WS-M |
| | ) |
| McCLAIN EZ PACK OF ALABAMA, INC., | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

    This matter is before the Court on the plaintiff's motion for attorney's fees and expenses. (Docs. 66, 67).[1] The plaintiff has filed a brief and evidentiary materials in support of his motion, which is ripe for resolution. After carefully considering the foregoing, and all other relevant materials in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

    The plaintiff filed a complaint against McClain EZ Pack of Alabama, Inc. ("McClain") and Mike Baker based on Baker's same-sex harassment of the plaintiff. The complaint asserted a claim against McClain for sexual harassment under Title VII as well as claims against both defendants for assault and battery, invasion of privacy, intentional infliction of emotional distress, and negligent and/or malicious retention, supervision and training. (Doc. 1). The plaintiff eventually settled with Baker, (Doc. 57), and obtained default judgment against McClain as a sanction for McClain's chronic disregard of court orders. (Doc. 59). After conducting a bench hearing to determine damages, the Court awarded the plaintiff $75,000 in compensatory damages and $150,000 in punitive damages on his claims against McClain. (Docs. 64, 65).

---

    [1]The plaintiff's motion to correct, by substituting a complete affidavit for an incomplete one previously provided, (Doc. 69), is **granted**.

**REQUESTED RELIEF**

The plaintiff seeks an award of fees and expenses as follows:

| | |
|---|---|
| Attorney's fee - Ann C. Robertson | $67,815.00 |
| Attorney's fee - Temple D. Trueblood | 20,457.50 |
| Paralegal time | 17,442.00 |
| Expenses | 23,899.33 |
| Total | $129,613.83 |

(Doc. 69, Robertson Affidavit at 17).

**ANALYSIS**

"In any action or proceeding under [Title VII], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs ...." 42 U.S.C. § 2000e-5(k). The plaintiff seeks an award pursuant to this provision. (Doc. 66 at 2).[2]

**I. Attorney's Fees.**

Calculation of an appropriate fee under Section 2000e-5(k) begins with the search for a "lodestar," which is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1491-92 (11th Cir. 1994)(internal quotes omitted). The lodestar figure may in some cases then be adjusted up or down to arrive at an appropriate award. *Id*. "The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a strong presumption that the lodestar represents the 'reasonable' fee, ... and have placed upon the fee applicant

---

[2]Under Alabama law, "[a]ttorney fees for adverse parties ... are recoverable only where authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be made." *Hall v. Hall*, 903 So. 2d 78, 81 (Ala. 2004). The plaintiff does not argue that he may be awarded fees under any principle of Alabama law. Thus, fees may be awarded only in connection with his Title VII claim.

the burden of showing that such an adjustment is necessary to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).   In making determinations as to lodestar and adjustment, the Court may look to the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), with the caveat that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983).[3]

### A. Lodestar.

The plaintiff asks for attorney's fees as follows:

|  | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Ann Robertson | 150.7 | $450 | $67,815.00 |
| Temple Trueblood | 116.9 | $175 | $20,457.50 |
| Karen Allen | 125.5 | $95 | $11,922.50 |
| Kelly Crowe | 58.1 | $95 | $5,519.50 |
| Total |  |  | $105,714.50 |

(Doc. 69, Robertson Affidavit at 1-2, 17).[4]

### 1. Hours reasonably expended.

As noted, the plaintiff may recover reasonable attorney's fees incurred in connection with his successful Title VII claim against McClain, but he may not recover fees incurred only in connection with his state-law claims against McClain and Baker.  Thus, those entries reflecting negotiations and other

---

[3]*Hensley* was decided under 42 U.S.C. § 1988.  However, the Supreme Court has declared that "our case law construing what is a 'reasonable' fee applies uniformly to all" similarly worded federal fee-shifting statutes, including Sections 1988 and 2000e-5(k).  *City of Burlington v. Dague*, 505 U.S. at 562.

[4]Allen and Crowe are paralegals.  A "reasonable attorney's fee" includes hours reasonably expended by paralegals at a reasonable hourly rate.  *E.g., Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 284-89 (1989)(Section 1988).

contacts with Baker's counsel to conclude a settlement may not properly be awarded as fees against McClain. By the Court's calculation, this excludes 0.4 hour of Ms. Robertson's time and 2.9 hours of Ms. Trueblood's time from September 2004 and March to May 2005.

The plaintiff's fee bill includes a number of hours attributable to the preparation, filing and prosecution of a charge of discrimination with the EEOC. Because Section 2000e-5(k) references "proceedings" as well as "actions," an award of fees may include those incurred by a plaintiff in the successful pursuit of statutorily required administrative proceedings, including EEOC charges. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61-62 (1980)(the term "proceeding" encompasses not only federal but state administrative proceedings). The plaintiff has failed to show that he was a "prevailing party" at the administrative level,[5] but that is not dispositive. At a minimum, a plaintiff who prevails at the judicial level may recover, as costs of the litigation itself, those fees incurred at the (unsuccessful) administrative level, to the extent the latter constitutes "work associated with the development of the theory of the case," *Webb v. Board of Education*, 471 U.S. 234, 243 (1985)(Section 1988), which work is not duplicative of hours charged and awarded following the administrative proceedings. *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1545 (11th Cir. 1988)(ADEA). The plaintiff's description of services indicates that these requirements are met. Nor do the hours expended appear unreasonable. Hence, all requested hours incurred in connection with the EEOC charge are awardable.

The fee bill also includes a number of hours incurred in the development and presentation of the pending motion for an award of fees and expenses. Such time is compensable to the extent it is reasonably expended. *See, e.g., Thompson v. Pharmacy Corp. of America*, 334 F.3d 1242, 1245 (11th Cir. 2003)("We have said that an attorney may recover fees for time spent litigating the award of a section 1988 fee."); *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979)(Section 1988)(the time expended must have been "reasonably necessary"). Although somewhat high, the Court cannot say that the time billed for this effort is unreasonably so. Accordingly, all requested hours incurred in connection with the fee petition are awardable.

---

[5]His complaint states only that he received a right-to-sue letter. (Doc. 1, ¶ 5).

The plaintiff's case was prosecuted by two attorneys. While this practice can lead to unnecessary redundancies in the provision of services, the Court's review of the billing records indicates that, with the exception noted below, no unreasonable redundancy has occurred; on the contrary, the practice appears to have had the salutary effect of shifting much of the work to the more junior attorney and accordingly to have helped hold fees in check. *See generally Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983)(Title VII)("An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.").

Both attorneys attended the final pretrial conference, even though the Court required only one to attend. (Doc. 48). Ms. Trueblood's contributions to the discussion at the pretrial conference could have been made just as effectively by telephone, as were those of Baker's counsel. The 9.5 hours charged for her travel to and from Birmingham for the 30-minute conference therefore were not reasonably expended and must be excluded. *See American Civil Liberties Union v. Barnes*, 168 F.3d 423, 433 (11th Cir. 1999)(Section 1988)("The time billed for excessive lawyers in a courtroom or conference when fewer would do may obviously be discounted.") (internal quotes omitted).

Work that may appropriately be performed by paralegals and billed to a client or a losing party includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989)(Section 1988). Much of what Ms. Allen and Ms. Crowe performed on this file falls into these and similarly appropriate categories. However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id*. Ms. Allen's time sheet includes entries for such things as copying documents, updating pleading and correspondence binders, applying Bates numbers to documents, mailing and telefaxing correspondence, obtaining driving directions, and even researching bed and breakfasts — all quintessentially secretarial functions. In addition, Ms. Allen billed repeatedly for reviewing court filings and correspondence to no apparent purpose and redundant to the attorneys' review of the same documents. Ms. Allen's time will be reduced by 20 hours to eliminate

these inappropriate billings.  Ms. Crowe's billings, which reflect similar entries on a much smaller scale, will be reduced by one hour.

Ms. Allen traveled to Mobile and attended the damages hearing in May 2005.  Given the limited nature of the hearing and the evidence presented, the absence of a defendant to challenge that evidence, and the presence of two attorneys for the plaintiff, Ms. Allen's presence appears redundant and her time not reasonably expended.  Certainly the plaintiff has not offered to explain the need for Ms. Allen's attendance.  Accordingly, the 16.5 hours she billed for this exercise will be excluded.

In summary, the Court's review of the hours billed indicates that Ms. Robertson's time should be reduced by 0.4 hours, to 150.3 hours, and that Ms. Trueblood's time should be reduced by 12.4 hours, to 104.5 hours.  In addition, Ms. Allen's time will be reduced by 36.5 hours, to 89.0 hours, and Ms. Crowe's time will be reduced by 1.0 hour, to 57.1 hours.

### 2. Reasonable hourly rate.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988)(Section 1988).  "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *ACLU v. Barnes*, 168 F.3d at 437 (internal quotes omitted).  The plaintiff's attorneys hail from Birmingham, and their submitted affidavits focus on the reasonableness of their proposed rates in that market, in Alabama as a whole, or in the nation generally.  This case, however, was filed in Mobile, not Birmingham, and a review of fee requests and awards in employment discrimination cases in this district reflects that the hourly rates of local employment counsel are far below the rate claimed by Ms. Robertson.[6]

---

[6]*See Smith v. Baldwin County Board of Education*, Civ. No. 03-0154-CB-C, Doc. 25 (disability)($225 claimed as reasonable rate); *Silvester v. City of Mobile*, Civ. No. 02-987-CG-M, Doc. 62 (race discrimination)($250 requested and awarded); *Davis v. Baroco Electrical Construction Co.*, Civ. No. 99-1055-S, Doc. 60 (retaliation)($150 requested and awarded); *Lane v. Wal-Mart Stores, Inc*., Civ. No. 98-0297-RV-S, Doc. 92 (sexual harassment and retaliation)($170

"If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *ACLU v. Barnes*, 168 F.3d at 437. Plaintiff's counsel asserts that "[t]here are very few attorneys in the local market who are willing to undertake representation of plaintiffs in employment discrimination cases," such that "many victims of employment discrimination have not been able to obtain competent counsel in this District." (Doc. 69, Robertson Affidavit at 6, 8). This statement, even if correct,[7] on its face fails to show that "there were *no* attorneys in [Mobile] — the place where this case was filed — who were willing and able to handle [the plaintiff's] claims." *ACLU v. Barnes*, 168 F.3d at 437 (emphasis added).[8] Accordingly, the plaintiff is limited to the "prevailing market rate in [Mobile] for similar services by lawyers of reasonably comparable skills, experience, and reputation."

The plaintiff has provided no information about such rates and, as the preceding footnote makes clear, the *highest* hourly rate in employment discrimination cases requested or upheld in this district is $250. Counsel justifiably trumpets her "experience, reputation and ability," (Doc. 69, Robertson Affidavit at 12), but "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given issue, regardless of price, but only for one with reasonable expertise at the market rate." *ACLU v. Barnes*, 168 F.3d at 437. Despite counsel's suggestion that the same-sex nature of the complaint somehow removed the case beyond the ken of most employment lawyers, (Doc. 69, Robertson Affidavit at 10, 11), the Court finds nothing so special about such cases that local

---

requested and awarded).

[7]Although purporting to have personal knowledge, the affiant offers nothing that could support the conclusion that she in fact has actual and significant information concerning either the quantity and quality of employment discrimination lawyers in this district or the inability of legitimate discrimination claimants to obtain competent local counsel.

[8]Similarly, her assertion that she is sufficiently busy that a rate below $450 would not interest her in providing representation, (Doc. 69, Robertson Affidavit at 7), is irrelevant because it addresses only the rate necessary to attract *her* attention, not that necessary to attract similarly competent local counsel.

counsel experienced in sexual harassment cases could be said on that basis to lack "reasonable expertise."[9]

Application of the locality rule to the evidence presented thus caps counsel's rate at $250.[10] A review of the *Johnson* factors indicates that no further reduction of Ms. Robertson's rate is required. However, Ms. Trueblood's rate will be reduced to $150 to reflect her more limited experience and reputation.

The plaintiff has provided no information concerning prevailing paralegal rates. According to the Court's independent research, the Middle District of Alabama in 2003 assigned hourly rates to paralegals of $75, $65, and $50. *See Hall v. Lowder Realty Co.*, 263 F. Supp. 2d 1352, 1358 (M.D. Ala. 2003); *Thompson v. Equifax Credit Information Services, Inc.*, 2003 WL 1579757 at *7 (M.D. Ala. 2003). Because the Middle District maximum rate for employment discrimination attorneys exceeds that of the Southern District,[11] the Court concludes that the same holds true for paralegal services. Given the plaintiff's failure to explain the experience and other qualifications of Ms. Allen and Ms. Crowe, the Court concludes that their time should be compensated at the lower end of this scale. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996)("Because there is no

---

[9]Counsel's remaining arguments in support of her proposed rate — that her fee arrangement was contingent (with the attendant risk of non-payment and certainty of delayed payment), that she risked being labeled a plaintiff's civil rights lawyer (with the attendant risk of lost prestige and non-contingent defense work), and that she finds the presentation of fee petitions unpleasant — are either idiosyncratic with her and thus irrelevant to the market rate or are shared by the lawyers making up the local market and thus are reflected in the market rate identified in text. *Cf. City of Burlington v. Dague*, 505 U.S. at 566 ("Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular risks of a case in negotiating their fee and in deciding whether to accept the case).").

[10]The Court is aware that it "should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000). The point here, however, is that the rates *requested* by local attorneys — which represent the best available evidence of the prevailing market rate — fall far below the rate sought by the plaintiff herein.

[11]*See Ramsey v. Public Service Commission*, 2000 WL 426187 at *6 (M.D. Ala. 2000) ("[T]he court concludes that the customary fee for attorneys working on employment discrimination cases in the Montgomery area ranges from $130.00 to $300.00.").

evidence regarding the paralegals' expertise in a civil rights case, the court finds that compensation at the lowest rate for paralegals outlined by Mr. Weathersby, $45 per hour, is an appropriate fee."). Accordingly, paralegal time will be valued at $50 per hour.

### 3. Calculation of Lodestar.

Applying the rulings made above, the lodestar amount of attorney's fees is as follows:

|               | Hours Expended | Hourly Rate | Total       |
|---------------|----------------|-------------|-------------|
| Ms. Robertson | 150.3          | $250        | $37,125.00  |
| Ms. Trueblood | 104.5          | $150        | $15,435.00  |
| Ms. Allen     | 89.0           | $50         | $4,450.00   |
| Ms. Crowe     | 57.1           | $50         | $2,855.00   |
| Total         |                |             | $59,865.00  |

### B. Adjustments.

The plaintiff seeks no upward adjustment from the lodestar amount. (Doc. 69, Robertson Affidavit at 17-18). Accordingly, none will be considered.

The primary reason for adjusting the lodestar amount downward is success on fewer than all relevant claims, *Hensley v. Eckerhart*, 461 U.S. at 434, and here the plaintiff was successful on the only claim as to which attorney's fees are available. Although the fees awarded exceed the plaintiff's recovery under his Title VII claim,[12] "[t]he Supreme Court has rejected proportionality of damages as a basis for a fee award," in part because "'a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'" *Cullens v. Georgia Department of Transportation*, 29 F.3d 1493 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)(Section 1988)(upholding a fee award seven times as large as the damages award).

---

[12]Because all of the plaintiff's claimed damages are captured by 42 U.S.C. § 1981a(b)(3), (Doc. 42 at 18), and because the size of the employer was below 101 employees, (Ford Deposition at 141), the plaintiff's award under his Title VII claim was limited by statute to $50,000. *Id*. § 1981a(b)(3)(A).

## II. Expenses.

Two items included in the plaintiff's requested expenses require scrutiny.

### A. Travel.

The plaintiff requests $799.16 as the cost of travel to and from Mobile for the damages hearing in May 2005 (which required an overnight stay). Because Ms. Allen's attendance at the hearing was not reasonable, this expense must be reduced by one-third, to $535.44.

### B. Expert Witness.

The plaintiff requests $15,425.82 for professional services provided by Dr. Marianne Rosenzweig. Expert witness fees, like attorney's fees, must be "reasonable." The record reflects that Dr. Rosenzweig's hourly rate, for both testimony and travel, is $150, (Doc. 52, Exhibit C), which the Court finds to be reasonable. At that hourly rate, however, the plaintiff's request is equivalent to over 100 hours of Dr. Rosenzweig's time, and the plaintiff has not attempted to show either the accuracy or the reasonableness of such an extraordinary expenditure of time. Accordingly, the award for Dr. Rosenzweig's services will be limited to the equivalent of 60 hours at her hourly rate, or a total of $9,000.[13]

---

[13]This number is not plucked from the air. The record reflects that Dr. Rosenzweig spent approximately 14.5 hours interviewing the plaintiff and other witnesses, (Trial Exhibit 2 at 1), and spent 9.5 hours being deposed, including travel time. (Doc. 52, Exhibit C). The record also reflects that Dr. Rosenzweig's other tasks were to review certain listed materials; to administer a Personality Assessment Inventory; and to prepare an initial and supplemental report, which the Court has reviewed. (Trial Exhibits 2, 3). The Court is aware of the approximate travel time between Mobile and Dr. Rosenzweig's home in Tuscaloosa as well as the time she spent in court on the day of the hearing, and the Court assumes that Dr. Rosenzweig spent time preparing for both her deposition and hearing testimony. The Court also assumes that Dr. Rosenzweig incurred expenses in connection with her travel to Mobile, including overnight lodging. Assigning generous figures to each of these components

In summary, the plaintiff's requested award for expenses of $23,899.33 will be reduced by $6,689.54 to $17,209.79.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for attorney's fees and expenses is **granted** in the amount of $77,074.79 and is otherwise **denied**.

DONE and ORDERED this 8th day of August, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

justifies, if barely, an award of $9,000 for her services.